# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-16-00564-CR

Luis Sandoval, Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. D-1-DC-15-302637, HONORABLE CLIFFORD A. BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a bench trial, the trial court found appellant Luis Sandoval guilty of aggravated assault and sentenced him to eight years' imprisonment. *See* Tex. Penal Code § 22.02(a). In a single appellate issue, Sandoval contends that the evidence was insufficient to support his conviction. We will modify the trial court's judgment of conviction and affirm the judgment as modified.

## BACKGROUND

At the bench trial, the State presented evidence that Sandoval assaulted Elmo Bonner while the two men were inmates at the Travis County Jail. The State's evidence showed that Sandoval struck Bonner unexpectedly from behind and continued striking him until a guard pulled Sandoval away. The State also presented evidence of the extent of Bonner's injuries, including photographs, a medical report, and Bonner's testimony. Sandoval presented evidence that Bonner

had previously threatened him and that "jail culture" required him to respond with violence. The trial court found Sandoval guilty and sentenced him, and this appeal followed.

## STANDARD OF REVIEW

In evaluating the sufficiency of the evidence supporting the trial court's verdict in a bench trial, we view the evidence in the light most favorable to the verdict and ask whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (quoting *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010)). In a bench trial, the trial court "is the sole judge of the credibility of the witnesses and may accept or reject any part or all of the testimony given by State or defense witnesses." *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. [Panel Op.] 1978); *see also Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995); *Valencia v. State*, No. 03-16-00723-CR, 2017 WL 1832461, at *4 (Tex. App.—Austin May 3, 2017, no pet. h) (mem. op., not designated for publication).

## DISCUSSION

Sandoval's indictment included two counts. The first count alleged that Sandoval committed aggravated assault by using or exhibiting a deadly weapon, "to-wit: his hand and fist and foot," while causing bodily injury to Bonner, and the second count alleged that Sandoval committed aggravated assault by causing serious bodily injury to Bonner. However, the State correctly argues in its appellate brief that, despite the term "count," the indictment must be understood to allege the commission of a single offense—aggravated assault—and to present two alternative means of committing that offense: (1) use or exhibition of a deadly weapon and (2) causing serious bodily

2

injury. *See Landrian v. State*, 268 S.W.3d 532, 539 (Tex. Crim. App. 2008) ("[T]he aggravating factors or elements are simply descriptions of separate means by which a single offense of assault may be committed."); *id.* at 540 ("[O]nce the underlying type of assault is defined, then either of the aggravating factors set out under Section 22.02(a) may elevate that distinct assaultive crime to a second-degree felony. The aggravating factors or elements are simply the way in which the simple assault becomes a more serious offense."). Here, the trial court found that Sandoval had committed aggravated assault both by using or exhibiting a deadly weapon and by causing serious bodily injury. On appeal, Sandoval challenges the sufficiency of both of those findings.

The Texas Penal Code defines "deadly weapon" as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17). The Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). Although a person's body parts are not necessarily deadly weapons, they may be so depending on the manner of their use. *See Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004) ("We have recognized before that a hand or a foot may be a deadly weapon within the meaning of § 1.07(a)(17) 'depending upon the evidence shown.'") (quoting *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. 1983)); *Collins v. State*, No. 07-15-00180-CR, 2017 WL 1632675, at *3 (Tex. App.—Amarillo Apr. 26, 2017, pet. filed) (mem. op., not designated for publication); *Palacio v. State*, No. 03-14-00654-CR, 2016 WL 6575228, at *2 (Tex. App.—Austin Oct. 31, 2016, pet. ref'd) (mem. op., not designated for publication) ("[B]ody parts, such as hands, may be deadly weapons based on their manner of

use or intended use and their capacity to produce death or serious bodily injury."); *but see Davis v. State*, Nos. 13-15-00355-CR, 13-15-00356-CR, 2017 WL 2375764, at *5 n.5 (Tex. App.—Corpus Christi June 1, 2017, no pet. h.) (stating that "Texas is in the minority of states allowing body parts to be considered dangerous or deadly weapons" and opining, "We generally observe that under the available analytical framework for reviewing a deadly weapon finding, the line between a misdemeanor assault and an aggravated assault is difficult to define when a defendant is alleged to have used only his hands."). "Several factors may be considered in determining whether an object is capable of causing death or serious bodily injury: (1) physical proximity between the victim and the object; (2) the threats or words used by the defendant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious injury; (5) the manner in which the defendant used the weapon; and (6) the nature of the wounds inflicted." *Palacio*, 2016 WL 6575228, at *2.

Here, the State presented evidence that Sandoval attacked Bonner unexpectedly from behind. The trial court also heard evidence that Sandoval intended his attack to incapacitate Bonner and prevent Bonner from responding. For example, the following exchange occurred at trial:

> [Prosecutor:] But you wanted to make sure that he was incapacitated so he couldn't get up and fight you, right?
>
> [Sandoval:] Definitely.
>
> ***
>
> [Prosecutor:] So in the context of that, you didn't want to just make contact with him and do one punch and you're done; you wanted to make sure he was down for the count?
>
> [Sandoval:] Yes.

4

In addition, the State presented evidence that Bonner's injuries were severe. The State presented testimony that Sandoval knocked Bonner unconscious and then continued attacking him until a corrections officer pulled Sandoval away. One witness testified, "There was a lot of blood. The floor was covered in blood." The State presented photographs showing Bonner and the floor splattered with blood. Bonner gave the following testimony about his injuries:

> I had—my eye was big. I lost a couple of teeth. Memory, I can't hardly remember now. I can't hardly see. All my teeth are loose—still loose.
>
> ***
>
> He broke some—bone fractures around my eye.
>
> ***
>
> He broke my nose, too.

The State also presented Bonner's hospital records, which indicate that Bonner sustained a "[r]ight orbital fracture," "[n]asal bone fractures," a "[l]eft maxillary sinus fracture," and a "[l]eft alveolar ridge fracture." These records also indicate that Bonner underwent "closed reduction and splinting of bilateral nasal bone fractures."

Viewing the evidence in the light most favorable to the verdict, we conclude, given the nature of the assault and the severity of Bonner's injuries, that sufficient evidence supports the trial court's deadly-weapon finding. *See Collins*, 2017 WL 1632675, at \*3–4 (holding evidence sufficient to support jury's finding that defendant used his foot as a deadly weapon, where jury heard evidence that defendant kicked complainant, complainant lost consciousness, complainant lost teeth, and witnesses saw complainant in a "pool of blood"). Therefore, we also conclude that sufficient evidence supports the conviction for aggravated assault. *See* Tex. Penal Code § 22.02(a)(2) (assault

5

is aggravated if actor "uses or exhibits a deadly weapon during the commission of the assault"). Accordingly, we overrule Sandoval's sole appellate issue.

Finally, the State contends that we should reform the trial court's judgment to reflect that Sandoval was convicted of aggravated assault under Texas Penal Code section 22.02(a) "without specifying a count." As discussed above, the State is correct that Sandoval's indictment alleged a single offense—aggravated assault—and that the State could establish either the use or exhibition of a deadly weapon or serious bodily injury as the aggravating factor. Therefore, we will modify the judgment to eliminate the specification of "Count I" and to change the "Statute for Offense" to "Penal Code 22.02(a)." *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

## CONCLUSION

We modify the trial court's judgment of conviction to eliminate the specification of "Count I" and to change the "Statute for Offense" to "Penal Code 22.02(a)." We affirm the trial court's judgment of conviction as modified.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Field and Bourland

Modified and, as Modified, Affirmed

Filed:  August 2, 2017

Do Not Publish

6